UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRICILLA DE SOUSA SILVA,<br><br>　　　　　Plaintiff<br><br>　　　v.<br><br>PIONEER JANITORIAL SERVICES, INC.,<br><br>　　　　　Defendant | Civil Action<br>10-cv-11264-JGD |

**MEMORANDUM OF LAW IN SUPPORT OF SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 615'S MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24**

**I.   INTRODUCTION**

The interest of the Applicant-in-Intervention, Service Employees International Union, Local 615 ("the Union"), in this matter involves its collective bargaining agreement ("CBA") with Defendant Pioneer Janitorial Services, Inc. ("the Employer"), along with the attendant legal and practical implications of interpreting a contract to which the Union is party. In its motion to dismiss the Plaintiff's individual sexual harassment action, the Employer has asked this Court to declare that the CBA contains an election-of-remedies clause that waives the right of an individual employee to pursue an individual claim of statutory discrimination because she filed a grievance within the CBA's 14-day time limit. The Union vigorously disagrees, both as a matter of contract interpretation and as a matter of federal law.

A ruling by this Court granting the Employer's motion to dismiss on the ground that the CBA contains an election-of-remedies clause will "as a practical matter impair or impede the [Union's] ability to protect its interest [in its CBA]." Fed. R. Civ. P. 24(a)(2). While the Union as a non-party would not be technically bound by this Court's interpretation of the CBA or a determination as to any waiver by the Union of the individual rights of the employees the Union represents, as a practical matter that determination would be far-reaching, both in terms of rights of union members the Union represents, and in terms of the Union's own obligations. Moreover, the Union has an agreement with the Employer under which questions of contract interpretation must be presented to an arbitrator, and with regard to the issues here, that right would be eviscerated if the Employer is permitted to evade that obligation.

The Union's proposed Action for Declaratory Judgment also "shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), as the Union will seek to oppose the Defendant's pending motion to dismiss. Moreover, because that motion presents novel issues of law following the Supreme Court's April 1, 2009 decision in 14 Penn Plaza, LLC v. Pyett, 129 S.Ct. 1456 (2009), the Union's participation will significantly contribute to full development of the issues and to the just and equitable adjudication of the legal questions presented.

## II.  STATEMENT OF THE CASE

Plaintiff Pricilla de Sousa Silva ("Employee") brought suit on June 1, 2010, in Suffolk Superior Court against the Employer, in which she alleged sexual harassment and retaliation in violation of G.L. c. 151B and negligent hiring, supervision and/or retention. The Employer removed the action to this Court and, on August 20, 2010, filed a Motion

to Dismiss. The Employer argues that its CBA with the Union contains an election-of-remedies provision that waives the Employee's substantive right to file a discrimination lawsuit because she filed a grievance under the CBA's contract provisions. The Employee's opposition to the motion is due on October 8, 2010.

On September 8, 2010, the Union filed a grievance pursuant to the CBA alleging that the Employer's interpretation of the CBA is wrong, and that the Employer thusly violated the CBA by filing its motion to dismiss in this matter. Also on September 8, 2010, the Union advanced this grievance to arbitration before the American Arbitration Association, where it is presently pending.

This matter now comes before the Court on the Union's motion to intervene in the above captioned proceeding, pursuant to Fed. R. Civ. P. 24(a)(2) and 24(b)(1)(B).

### III. ARGUMENT

#### A. LOCAL 615 MEETS THE REQUIREMENTS FOR INTERVENTION AS A MATTER OF RIGHT

The Union fulfills the requirements for intervention as a matter of right under Fed. R. Civ. P. 24(a)(2). The Rule provides in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). Courts in this Circuit have held that "[a] putative intervenor thus must show that (1) it timely moved to intervene; (2) it has an interest relating to the property or transaction that forms the basis of the ongoing suit; (3) the disposition of the action threatens to create a practical impediment to its ability to protects its interest; and

3

(4) no existing party adequately represents its interests." B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 544-545 (1st Cir. 2006).

### 1. LOCAL 615'S MOTION TO INTERVENE IS TIMELY

Local 615's motion to intervene must be considered timely. In determining timeliness, the Court may look first to the stage of litigation of the action, for the further along the litigation has advanced, the greater the scrutiny. See Geiger v. Foley Hoag LLP Retirement Plan, 521 F.3d 60, 65 (1st Cir. 2008). Where, as here, there has been no discovery or even an answer to the complaint, the litigation is not, in any way, at an advanced stage. See id. at 64-65.

There are several other factors the Court must consider in determining timeliness, namely, "1) the length of time the intervenor knew [his] interest was imperiled; 2) the foreseeable prejudice to the existing parties if intervention is granted, or to the intervenor if it is denied; and 3) any 'idiosyncratic circumstances' which weigh for or against intervention." Id. at 65 (quoting Banco Popular de Puerto Rico v. Greenblatt, 964 F.2d 1227, 1230 (1st Cir.1992)).

Here, prior to the Defendant's filing of its Motion to Dismiss on August 20, 2010, the Union had no reason to know that the Employer would seek an interpretation of the CBA in this action or that it would contend here or elsewhere that the CBA barred the individual employment action by the Plaintiff. The Union is seeking intervention promptly after learning of the Defendant's contention and action here. There is no prejudice to the Plaintiff or the Defendant caused by the timing of this motion to intervene, as the motion is being filed at the outset of the suit, well before the scheduled hearing on Defendant's motion to dismiss and prior to any discovery or resolution of any

4

legal issues in this proceeding. Indeed, both Plaintiff and Defendant assent to the Union's intervention.

By contrast, the potential prejudice to the Union of an incorrect interpretation of its CBA is substantial. The one relevant idiosyncratic circumstance here, namely the timing of Defendant's motion barely a year after the Supreme Court issued its decision in 14 Penn Plaza, supra, and prior to any development in this Circuit of the legal issues raised by that decision, also weighs in favor of intervention.

In an extremely similar matter last summer, Judge George O'Toole granted the Union's motion to intervene, which was brought on virtually the same grounds as the motion here, after the employer had also sought dismissal on based on 14 Penn Plaza. The union's motion to intervene in that case was filed later in the proceedings as intervention was requested after the plaintiff in that case had already filed his opposition to the employer's motion to dismiss. See Solano v. AlliedBarton, 09-cv-10587-GAO, Docket Entry, July 23, 2010 (a copy of which is attached as an addendum to this memorandum). Here, the Union's motion to intervene has been filed well before the Plaintiffs' opposition to the employer's motion to dismiss is due.

For these reasons, the Union's Motion to Intervene is timely within the meaning of Fed. R. Civ. P. 24(a)(2).

### 2. LOCAL 615 HAS AN INTEREST RELATING TO THE PROPERTY OR TRANSACTION THAT FORMS THE BASIS OF THE ONGOING SUIT

The Union has an indisputable interest in the correct interpretation of its CBA, both on behalf of its members and on its own behalf. That interest is tied to this individual discrimination suit because the Defendant has raised the CBA as a bar to that action.

The Defendants contend that employees represented by the Union are limited to a grievance and arbitration provision under the CBA as the sole and exclusive means of vindicating their statutory rights. The Union has an interest, on behalf of its members, in protecting these contractual rights and in ensuring that the statutory rights of the members it represents are not impaired by virtue of the Employer's incorrect construction of the CBA. Moreover, the Union also has a right under the CBA to have this question determined by an arbitrator.[1]

In addition, if the Employer's interpretation were accepted, employee statutory claims would need to be vindicated, if at all, through the Union grievance and arbitration provision, whenever an employee filed a grievance (which must be done within 14 days of an occurrence). If the Union were to attempt to vindicate fully the statutory rights of any member who filed a discrimination grievance, it would face huge financial burdens in attorneys' fees and costs. If the Union failed to vindicate fully these statutory rights on behalf of each of its members, it would face the specter of lawsuits based on a purported breach of the duty of fair representation. For these reasons, the Union has its own interest, apart from that of any individual member, in the correct interpretation of the CBA.

For purposes of intervention as of right, the interest at issue must be "significantly protectable." Conservation Law Foundation of New England, Inc. v. Mosbacher, 966 F.2d 39, 42 (1st Cir. 1992) (quoting Donaldson v. United States, 400 U.S. 517, 531

---

[1] The Supreme Court long ago explained the primacy of the arbitrator in interpreting a CBA: "The labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed be foreign to the competence of courts... The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment." United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 581-582 (1960).

6

(1971)).  The First Circuit has emphasized that "[t]here is no precise and authoritative definition of the interest required to sustain a right to intervene," but has reiterated "that the intervenor's claims must bear a 'sufficiently close relationship' to the dispute between the original litigants" and that "[t]he interest must be direct, not contingent." Id. (quoting Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 638 (1st Cir.1989)).  The determination of whether an interest is sufficient "is colored to some extent" by "whether the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest."  Id.

Additionally, an "intervenor has a sufficient interest in the subject of the litigation where the intervenor's contractual rights may be affected by a proposed remedy." B. Fernandez & Hnos., Inc., 440 F.3d at 545 (intervenor whose contract rights may be affected "easily meets the requirement"). See also Stallworth v. Monsanto Co., 558 F.2d 257, 268-69 (5th Cir.1977) (finding that the existence of a contractual relationship, if demonstrated, would constitute an interest).

In the specific context of the interplay of collective bargaining agreements and employment discrimination disputes, courts in other Circuits have found that rights in a collective bargaining agreement represent an interest within the meaning of Fed. R. Civ. P. 24(a)(2). See, e.g., Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 131 (2d Cir. 2001) (finding seniority rights in a collective bargaining agreement are an interest); United States v. City of Hialeah, 140 F.3d 968, 982 (11th Cir.1998) (finding that seniority and other benefits conditioned on seniority in two collective bargaining agreements represent interests); Edwards v. City of Houston, 78 F.3d 983, 1004 (5th Cir.1996) (en banc) (holding that access to promotion system and promotion opportunities is an interest);

Thomas v. Bakery, Confectionery & Tobacco Workers Int'l Union, 982 F.2d 1215, 1220 (8th Cir.1992) (finding that possible effects of dovetailing/end-tailing of plaintiffs on contractual rights constituted an interest); EEOC v. American Tel. & Tel. Co., 506 F.2d 735, 741-42 (3d Cir. 1974) (seniority and other provisions in an existing collective bargaining agreement comprise an interest); Vulcan Soc. of Westchester County, Inc. v. Fire Dept. of City of White Plains, 79 F.R.D. 437 (D.N.Y. 1978) (effect of litigation on hiring, promotion and salary procedures -- procedures that had, in large part, been collectively bargained between the Union and the Department -- constituted an interest).

Because both the Union and its members have contractual rights at issue here, and because the interpretation of the CBA could affect the Union's statutory duty of fair representation, the Union has a protectable interest under Fed. R. Civ. P. 24(a)(2).

### 3. THE COURT'S POTENTIAL RULING IN THIS ACTION THREATENS TO CREATE A PRACTICAL IMPEDIMENT TO LOCAL 615'S ABILITY TO PROTECTS ITS INTEREST

If the Court denies intervention and grants Defendants' motion, the Court's decision here would not directly bar the Union from re-litigating the contract interpretation issues, as a non-party would not be so precluded under the principles of *res judicata* and collateral estoppel.  As a practical matter, however, an adverse decision in this Court would impede Local 615's ability to protect these interests.  See Conservation Law Foundation of New England, Inc., 966 F.2d at 41 ("Disposition of the action may, as a practical matter, impair or impede that applicant's ability to protect the interest") (emphasis supplied).

There are three significant ways in which Local 615's interest will be potentially and practically impeded by an adverse interpretation of the CBA by this Court.

First, although an adverse determination would not be binding on the Union, an arbitrator listening to the Company's arguments on that point may well find the ruling of a federal court highly persuasive, and Local 615 would be hard pressed to overcome the persuasive value of such a ruling in that forum.

Second, if the Court issues an adverse interpretation of the CBA, the Union would be at a grievous disadvantage in advising its members on the manner in which they should proceed when they believe the Company has discriminated against them – specifically in terms of advising those members on the forum in which they should press their claim.

Finally, the Union would be confronted with the Hobson's choice of attempting to fully vindicate the employee's statutory rights through the arbitration forum, at an untenable financial burden for the membership as a whole (the Union's litigation costs are funded through member dues), or refusing to do so, and facing the specter of a suit for breach of the duty of fair representation.

The potential effects on Local 615 in this action are similar to those at issue in CBS Inc. v. Snyder, 136 F.R.D. 364 (S.D.N.Y., 1991) in which the Court allowed the motion of a union to intervene in a case in which interpretation of a collective bargaining agreement – specifically whether a Court or an arbitrator had the power to determine whether a particular claim was time-barred – was central to the ongoing litigation. The Union argued in that case that, if the Court decided the issue of whether a particular claim was time-barred without intervention by the Union, then the Employer would have received a benefit through litigation that it had not successfully negotiated at the bargaining table. Id. at 368. The same reasoning holds in the instant dispute where, if

successful in its motion, Pioneer will obtain a waiver of the rights of employees to bring statutory claims in court whenever the grievant has filed a grievance (even when only 14 days after the claim arose) – a waiver it did not obtain at the bargaining table, and to which it is not legally entitled.

For all of these reasons, a ruling by this Court without the contribution of Local 615 would make it substantially more difficult for the Union to protect its interest and those of its members, and intervention is justified.

### 4. NEITHER OF THE PARTIES IN THE ONGOING LITIGATION REPRESENTS LOCAL 615'S INTERESTS

Local 615's distinct interests in this case are not adequately represented by either of the parties in the ongoing litigation. "Typically, an intervenor need only make a 'minimal' showing that the representation afforded by a named party would prove inadequate." B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d at 545-546 (quoting Trbovich v. United Mine Workers, 404 U.S. 528, 538 (1972)).

Obviously, the Defendants' interest is the diametrical opposite of the Union's: having the Court not only dismiss the suit, but also rule that an employee's sole remedy for statutory claims is the grievance and arbitration process under the CBA. The Plaintiff's interest is only in safeguarding her own claim, and she has no concern regarding broader issues of contract interpretation or other interests of the Union.

### B. LOCAL 615 ALSO FULFILLS THE LEGAL REQUIREMENTS FOR PERMISSIVE INTERVENTION

Local 615 also meets the legal standards necessary for permissive intervention in this action. Courts enjoy wide discretion in granting permissive intervention under

Fed.R.Civ.P. 24(b).  Daggett v. Commission on Governmental Ethics and Election Practices, 172 F.3d 104, 113 (1st Cir.1999).

As with a motion under Rule 24(a), permissive intervention requires an intervenor's application to be timely.  Fiandaca v. Cunningham, 827 F.2d 825, 832-833 (1st. Cir.1987).  As set forth above, the application here is timely.

Courts may permit intervention under Rule 24(b) when "when an applicant's claim or defense and the main action have a question of law or fact in common," so long as the intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties." Id.  Here, Local 615's claim regarding interpretation of the CBA addresses the very issues raised by Pioneer's defense, and will implicate the same questions of fact and law.  Since the Defendants' motion to dismiss will require a determination of what the CBA means and whether it constitutes an clear and unmistakable waiver of an individual employee's right to litigate statutory claims in court, the Union's intervention will center on the exact same questions of law and fact, albeit from the divergent standpoint of protecting its CBA.  Moreover, given Local 615's prompt motion to intervene, permitting the Union's intervention will neither delay nor prejudice the adjudication of the rights of the original parties.

In considering permissive intervention, courts may also assess "whether the applicant will benefit by the intervention and whether the intervenor will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." The Travelers Indem. Co. v. Bastianelli, 250 F.R.D. 82, 85 (D.Mass.2008); see also In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollution, 712 F.Supp. 1019, 1023

11

(D.Mass.1989). Local 615 will contribute substantially to the full development of the factual issues in this case because it is the labor organization that negotiated the collective bargaining agreement at the center of the motion to dismiss, and whose statutory duty as authorized bargaining representative requires policing the rights contained in the CBA. The Union will be able to provide critical background on the negotiations that led to the CBA provision at issue, and precisely what the Union understood that provision to mean when it signed off on the contract. The Union will also be in a strong position to assess and present the legal issues surrounding the 14 Penn Plaza decision.

For all of the foregoing reasons, the Court should grant Local 615's motion to intervene.

>
> Respectfully submitted,
>
> SERVICE EMPLOYEES INTERNATIONAL UNION,
> LOCAL 615
>
> By its attorneys,
>
> /s/ James A.W. Shaw
> Indira Talwani, Esq., BBO# 645577
> James A.W. Shaw, Esq., BBO# 670993
> Louis A. Mandarini, III., Esq., BBO# 669293
> SEGAL ROITMAN, LLP
> 111 Devonshire St., 5th Floor
> Boston, MA 02109
> Phone: (617) 742-0208
> Fax: (617) 742-2187
> E-mail: jshaw@segalroitman.com

Dated: September 13, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing

12

(NEF) and paper copies will be sent to those indicated as non-registered participants on September 13, 2010.

                                              /s/ James A.W. Shaw