UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRICILLA DE SOUSA SILVA,<br><br>      Plaintiff<br><br> -and-<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 615,<br><br>      Intervenor-Plaintiff<br><br> v.<br><br>PIONEER JANITORIAL SERVICES, INC.,<br><br>      Defendant,<br>      Intervenor-Defendant | Civil Action<br>10-cv-11264-JGD |

## **OPPOSITION TO PIONEER JANITORIAL SERVICE'S MOTION TO DISMISS**

I. Introduction

  Intervenor-Plaintiff Service Employees International Union Local 615 ("Local 615") hereby opposes the Motion to Dismiss brought by Defendant Pioneer Janitorial Services, Inc. ("Pioneer")

  Pioneer seeks dismissal on the theory that the Plaintiff's right to bring a sexual harassment lawsuit has been waived by operation of a collective bargaining agreement ("CBA") between Pioneer and Local 615. Pioneer argues that once the Plaintiff filed a union grievance, she forever waived her right to litigate her case in court, even though her case was never brought

1

to arbitration by Local 615 (the only party with the authority to initiate arbitration). However, not only does Pioneer misinterpret the CBA, but more importantly, if Pioneer were correct in its interpretation, the contract language would be unenforceable because the effect is to waive the Plaintiff's right to any forum at all.

Pioneer's waiver theory results in two independent reasons why this Court must deny the motion *ab initio*. First, the purported waiver is not clear and unmistakable, and for that reason alone is unenforceable. Second, Pioneer's interpretation of the CBA would result in an unlawful substantive waiver of the Plaintiff's right to bring a sexual harassment lawsuit under Chapter 151B because it does not provide Silva with an effective and accessible alternative forum.

If the Court does not find the waiver unlawful, the Court is then presented with the question of whether Pioneer's interpretation of the grievance and arbitration provisions of the contract is correct. Such a fact-based question is not appropriately decided on a motion to dismiss, but in any event, the parties to the CBA have agreed that such questions of contract interpretation must be resolved through arbitration. Accordingly, if the Court needs to reach the question of the proper interpretation of the grievance and arbitration decision, it should then defer to the labor arbitrator who has been assigned, pursuant to the parties' agreement, to hear the dispute between Local 615 and Pioneer regarding the interpretation of the CBA.

II. Overview of Relevant Facts

Pioneer Janitorial Services, Inc. ("Pioneer" or "the Employer") is an employer that provides janitorial services at, inter alia, the Berklee School of Music ("Berklee") in Boston's Back Bay. Compl., ¶¶ 2, 5. Pricilla de Sousa Silva ("Silva" or "the Employee") began working as a janitor for Pioneer at Berklee in 2002. Compl., ¶ 5. Mick da Silva ("the Supervisor") became

Silva's supervisor in 2006, and began sexually harassing Silva on a regular basis. Compl., ¶ 7. The Supervisor would make unwanted comments about Silva's body and her appearance. Id.

After Silva became pregnant, the harassment continued, and the Supervisor would ask humiliating questions such as "who is the father?", causing Silva's co-workers to laugh at her, often bringing Silva to tears. Compl., ¶ 9. Other forms of harassment included claiming that the father of Silva's child "wants nothing to do with you," compl., ¶ 10, discussing the Supervisor's penis and its size, compl., ¶ 11 and 12, discussing the penis of her African-American boyfriend, compl., ¶ 16, commenting on female employees' undergarments, compl., ¶ 13, and telling several of Silva's co-workers that the Supervisor "gave it to [Silva] from behind" in the office, compl., 14.

When Silva complained about this treatment, the Supervisor told her that her problems would end if she had sexual intercourse with him. Compl., ¶ 15. In December 2008, Silva was suspended for three days, allegedly for not completing work. Compl., ¶ 27.[1]

Silva and the other janitors employed by Pioneer are represented by Local 615 of the Service Employees International Union ("the Union" or "Local 615"). Silva filed a grievance against the employer alleging, in part, sexual harassment. Ex. E to Local 615's Action for Dec. Judg. In her grievance, she and the Union alleged that Pioneer violated Articles 21 and 25, and any other pertaining articles. Id. The grievance sought back pay for the three-day suspension, a halt to the Supervisor's ongoing sexual harassment, and requested that the Supervisor be removed from Silva's worksite. Id.  According to Pioneer, "[Silva] informed her Union that she

---

[1] The Union here does not recount Pioneer's recitation of discipline that Pioneer allegedly imposed on Silva, and on October 7, 2010, filed a motion to strike this material as irrelevant and prejudicial.

3

had been sexually harassed and the Union filed a grievance. After investigating the matter, the Union dropped the grievance outright." MCAD Position Statement, ¶ 32.[2]

Silva brought a charge of discrimination at the Mass. Commission Against Discrimination, and subsequently filed suit in Suffolk Superior Court on June 2, 2010. After removing to this Court, Pioneer filed its motion to dismiss, alleging that the CBA waived Silva's substantive right to bring a discrimination lawsuit.

The CBA explicitly proscribes all forms of discrimination, including sexual harassment. Article 21.2. It further states that "an employee who chooses to pursue any claims arising under … the Massachusetts Fair Employment Practices Act … shall do so in accordance with this Article." Id. The next section of the CBA states:

> The employee may, at his or her election, pursue such discrimination claims either (1) through the grievance and arbitration procedure (Article 37), or (2) through any other forum available at law, including, but not limited to, any state or federal court action and/or any state or federal fair employment practices administrative agency. Once an employee has pursued in any forum a particular discrimination claim, or related claim, such forum shall be the sole and exclusive forum for such claim. Arbitrators shall apply appropriate applicable law in rendering decisions regarding discrimination claims.

Article 21.3.

The grievance and arbitration procedure, Article 37.3, states that "no grievance shall be considered which has not been presented at and in accordance with Step 1 of this Grievance Procedure within fourteen (14) calendar days after the grievant knew or had reason to know of the incident giving rise to the grievance, whichever is sooner." Furthermore, while the employee must sign the original grievance, only the Union has the authority to bring a case to arbitration

---

[2] The Union attaches here, as Exhibit A, pages 1, 6 17 and 18 of Pioneer's MCAD Position Statement, representing the first page, and the signature pages of the statement, along with the page containing the fact relevant to this motion. The remainder of the material is irrelevant at this stage, and Local 615 does not include it for reasons stated in its Motion to Strike filed on Oct. 7, 2010.

under the terms of the CBA. Article 37.3, Step 4 ("If the grievance is not resolved at Step 3, it must be referred to arbitration by the Union within thirty (30) calendar days…")

III. Argument

Pioneer's Motion to Dismiss is flawed in numerous respects. First, assuming that Pioneer's interpretation of the CBA is correct – that an employee forever waives her right to file a lawsuit by filing a union grievance, even where her case is not brought to arbitration – the arbitration agreement is unenforceable. Although Silva did file a grievance, it is Pioneer's assertion that Local 615 dropped the grievance and refused to arbitrate. Thus, Pioneer is advancing not the familiar argument that one must arbitrate rather than litigate, but instead is making the extreme argument that Silva has lost her right to any forum whatsoever. This proposed construction must be rejected, first because the purported waiver presented is not clear and unmistakable, and second, because under Pioneer's interpretation of the CBA, the agreement functions as a waiver of Silva's substantive right to sue for sexual harassment under Chapter 151B without providing an effective and accessible alternative forum. The Supreme Court is clear that while an employee may be required to arbitrate a statutory claim of discrimination, an employment-based agreement may not waive an employee's substantive right to sue.

Furthermore the arbitration agreement, while well suited to resolve labor disputes, is not appropriate for individual claims, as the process explicitly deprives Silva of the right to, for example: be represented by a lawyer; present evidence; participate in selecting the arbitrator; or even initiate an arbitration hearing at all. Nor does Massachusetts law somehow trump these federal requirements, for contrary to Pioneer's contention, Massachusetts law does not require arbitration of disputes when agreed to in a CBA.

Alternatively, if (and only if) the Court does not accept the arguments above, it will be confronted with the question of the proper interpretation of a disputed provision of the CBA, for the Union contends that an employee's election of remedies does not occur when the employee files an initial grievance, but only at the point her discrimination grievance is arbitrated. That question, however, is not appropriately decided on a motion to dismiss, and in any event, the parties here have previously agreed through the CBA that disputes as to the interpretation of the CBA must be determined by an arbitrator.

A. <u>The arbitration waiver in the CBA is not clear and unmistakable</u>

As will be discussed below, Local 615 disputes Pioneer's interpretation of the CBA, and in particular disputes that the CBA waives Silva's right to prosecute her sexual harassment lawsuit in court. Even if Pioneer's interpretation of the CBA were correct, it is nonetheless unenforceable because the waiver does not clearly and unmistakably require Silva to pursue arbitration upon the filing of a grievance. Although the Supreme Court decided in <u>14 Penn Plaza, LLC v. Pyett</u>, 129 S.Ct. 1456 (2009), that a CBA may require an individual employee to arbitrate her statutory claims, it remained the law that such a requirement must be expressed with clear and unmistakable language. <u>Wright v. Universal Maritime Service Corp.</u>, 525 U.S. 70 (1998) (articulating the "clear and unmistakable" standard). The Supreme Court in <u>14 Penn Plaza</u> reaffirmed <u>Wright</u>'s "clear and unmistakable" requirement, which remains the applicable legal standard to determine the clarity of the waiver. Because the purported waiver here is not clear and unmistakable, Pioneer's Motion to Dismiss should be denied.

Courts have imposed a high standard in scrutinizing an arbitration clause to determine whether it clearly and unmistakably requires arbitration. <u>See</u> <u>O'Brien v. Town of Agawam</u>, 350 F.3d 279, 286 (1st Cir. 2003) (arbitration provision without even "a single reference ... to

arbitration of statutory claims, let alone a clear and unmistakable waiver of a judicial forum for such claims" does not meet the requirement for a clear and unmistakable waiver). The First Circuit's approach in O'Brien to the question of waiver under Wright is consistent with its handling of waivers of statutory rights in other contexts. "[T]he law of this circuit is that 'a waiver [of statutory rights] should be express, and that a mere inference, no matter how strong, should be insufficient.'" Comm. Workers of Am., AFL-CIO, Local 1051 v. National Labor Relations Board, 644 F.2d 923 (1st Cir. 1981) (quoting NLRB v. Perkins Machine Co., 326 F.2d 488, 489 (1st Cir. 1964) and cited with approval in Union Builders, Inc. v. NLRB, 68 F.3d 520 (1st Cir. 1995)).

Pioneer's argument here is that an employee forever waives her right to file a discrimination lawsuit by merely filing a grievance. Even if lawful, that conclusion is not clearly drawn from the language of the CBA. The CBA states: "Once an employee has pursued in any forum a particular discrimination claim, or related claim, such forum shall be the sole and exclusive forum for such claim." CBA, Article 21.3 (emphasis added). However, the terms "pursued" and "forum" are undefined, and left begging in interpretation and application.

The implication of Pioneer's argument is that one has "pursued" the forum of arbitration by filing a grievance, rather than by filing a demand for arbitration. As discussed below, the Union disagrees with the suggestion that grievance and arbitration procedure constitutes a unitary step, but importantly here, that claim of a unitary procedure is also fatal to Pioneer's waiver argument because it is not clearly and unmistakably expressed.

7

B. <u>As interpreted by Pioneer, the arbitration clause in the CBA waives Silva's substantive right to bring a sexual harassment lawsuit and accordingly is unenforceable</u>

Even if Pioneer's interpretation were correct and clearly and unmistakably expressed, this Court should still deny the motion to dismiss. Pioneer's interpretation of the CBA would result in a substantive waiver of Silva's right to litigate her claim, a result that is clearly forbidden.

Under federal law, an arbitration agreement "that prohibits use of the judicial forum as a means of resolving statutory claims <u>must</u> also provide for an effective and accessible alternative forum." <u>Shankle v. B-G Maintenance Mgt. of Colo., Inc.</u>, 163 F.3d 1230, 1234 (10th Cir. 1999) (emphasis added) (relying on <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20 (1991)). While the Supreme Court authorized mandatory arbitration of individual statutory claims of discrimination, "[o]bviously, [<u>Gilmer</u>] cannot be read as holding that an arbitration agreement is enforceable <u>no matter what rights it waives or what burdens it imposes</u>. Such a holding would be fundamentally at odds with our understanding of the rights accorded to persons protected by public statutes like the ADEA and Title VII." <u>Cole v. Burns Intern. Sec. Services</u>, 105 F.3d 1465, 1482 (D.C. Cir. 1997) (emphasis added). Pioneer does not address this dispositive issue, and it is fatal to Pioneer's Motion to Dismiss.

According to the Supreme Court, only where "the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum" will the non-discrimination statutes "continue to serve both [their] remedial and deterrent function." <u>Gilmer</u>, 500 U.S. at 28 (citing <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 637 (1985)); <u>see also</u> <u>Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 170 F.3d 1 (1st Cir. 1999). In the arbitration of a statutory claim, an employee "does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 20, 26 (2001). The Supreme Court continues to

8

adhere to the requirement that an arbitration agreement may be enforced only where the required arbitral forum sufficiently vindicates statutory rights. 14 Penn Plaza LLC v. Pyett, 129 S. Ct. 1456, 1474 (2009) ("a substantive waiver of federally protected civil rights will not be upheld"). Here, the arbitration provision fails both because Silva's access to arbitration is controlled by the Union and because the procedures adopted by the parties for such arbitrations cannot sufficiently vindicate statutory rights.

1. A grievance and arbitration process controlled by the union is unenforceable as a waiver of individual statutory rights

In 14 Penn Plaza, the employees argued that the CBA operated as a substantive waiver of their statutory rights because it not only precluded a federal lawsuit, but also allowed the Union to block arbitration of their statutory claims. 129 S.Ct. at 1474. The majority found the facts had not been sufficiently developed below so as to allow it to resolve in the first instance "whether the CBA allows the Union to prevent respondents from 'effectively vindicating' their 'federal statutory rights in the arbitral forum,'" and remanded case for further proceedings. Id. (quoting Green Tree Financial Corp.-Ala. v. Randolph, 531 U.S. 79, 90 (2000)). In so doing, however, the Court acknowledged that "a substantive waiver of federally protected civil rights will not be upheld." Id. (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 and n.19 and Gilmer, 500 U.S. at 29). Justice Souter observed that 14 Penn Plaza "may have little effect" because it "'is usually the case'" that "the union controls access to and presentation of employees' claims in arbitration." 14 Penn Plaza, 129 S.Ct. at 1481 (Souter, J., dissenting) (quoting McDonald v. West Branch, 466 U.S. 284, 291 (1984)). The majority in 14 Penn Plaza clarified the distinction between the waiver of a judicial forum and the prospective waiver of substantive rights, noting that Gardner-Denver "was correct in concluding that [substantive] federal antidiscrimination rights may not be prospectively waived . . . ." 129 S.Ct. at 1469.

9

In its Position Statement to the MCAD, Pioneer averred under oath that Silva "informed her Union that she had been sexually harassed and the Union filed a grievance. After investigating the matter, the Union dropped the grievance outright." Exh. A, ¶ 32. The fact that the Union "dropped the grievance outright" defeats Pioneer's motion. Courts have held, in cases decided after 14 Penn Plaza, that an arbitration agreement in a CBA is unenforceable where an individual employee is prevented by the Union from arbitrating her claim. Kravar v. Triangle Services, Inc., 2009 WL 1392595 (S.D.N.Y. 2009) (Since "the CBA here operated to preclude Ms. Kravar from raising her disability-discrimination claims in any forum[,]…the CBA operated as a waiver over Ms. Kravar's substantive rights, and may not be enforced."; see also Borrero v. Ruppert Housing Co., Inc., 2009 WL 1748060, *2-3 (S.D.N.Y. 2009) ("Should [plaintiff's] attempts to arbitrate his claims be thwarted by the Union, the CBA will have operated as a 'substantive waiver' of his statutorily created rights and he will have the right to re-file his claims in federal court."); Johnson v. Tishman Speyer Properties, L.P., 2009 WL 3364038 (S.D.N.Y. 2009) ("an exception to the enforceability of a union-negotiated arbitration provision may exist where a union prevents a member from arbitrating discrimination claims"); Morris v. Temco Serv. Indus., Inc., 2010 WL 3291810 (S.D.N.Y. Aug. 12, 2010) (because "record shows that it was not Morris but the Union which chose to abandon her discrimination claims"… "the CBA's arbitration provision may not be enforced as to her"). To hold otherwise, and particularly in light of the severity of Silva's allegations, would undermine Chapter 151B's "purpose of eradicating the evil of discrimination." DeRoche v. Massachusetts Comm'n Against Discrimination, 447 Mass. 1, 14 (2006).

As in Kravar, the CBA's arbitration procedure here is not accessible by individual members such as Silva, and is controlled instead by the Union, allowing the Union to block

arbitration subject only to its duty of fair representation. See Vaca v. Sipes, 386 U.S. 171 (1967). Under Vaca and its progeny, the Union, subject only to an extremely broad level of discretion, may legitimately choose not to pursue even an employee's meritorious grievance to arbitration if the costs of litigation are prohibitive, or if the individual's goals conflict with the goals of the larger group. Newbanks v. Central Gulf Lines, Inc., 64 F.Supp.2d 1, 6 (D.Mass 1999) (finding the following factors appropriate considerations in examining a grievance: "(1) the facts of the case, (2) the likelihood of success in arbitration, (3) the cost of arbitration, (4) the union's credibility with the employer, and (5) the impact of pursuing the grievance on other union members."); Hussey v. Quebecor, 2 F.Supp.2d 217, 225 (D.R.I. 1998); Ayala v. Union de Tronquistas de Puerto Rico, Local 901, 74 F.3d 344, 345-346 (1st Cir. 1996) ("A union is accorded considerable discretion in dealing with grievance matters, and it may consider the interests of all its members when deciding whether or not to press the claims of an individual employee"). Silva cannot be said to have waived a right over which she had no control.

Here, as in Kravar, Borrero, Tishman, and Morris, a clause denying arbitration is unenforceable as a substantive waiver of rights, where a bargaining unit member such as Silva has no power or authority to require arbitration.[3]

2. The procedures adopted by the parties under the arbitration agreement are also insufficient to vindicate substantive statutory rights

The CBA requires that all arbitrations shall be conducted in accordance with the rules of the American Arbitration Association ("AAA"). CBA, Article 37.3 (Step 4.a). Under the AAA's Labor Arbitration rules, the "parties shall be deemed to have made these rules [i.e., the Labor Arbitration rules] a part of their arbitration agreement whenever, in a collective bargaining

---

[3] Some of the harassment and retaliation alleged by Silva occurred after she filed the grievance, and obviously could not have been the subject of the grievance. To the extent Pioneer is arguing that a grievance precludes challenging harassment and retaliation that occurred after the grievance, that argument is illogical and must be rejected.

agreement or submission, they have provided for arbitration by the American Arbitration Association (hereinafter the AAA) or under its rules." Local 615's Act. for Dec. Judg., Ex. B (Labor Rule 1). However, the AAA's labor rules are not appropriate for the arbitration of an employment lawsuit such as Silva's.

Even assuming *arguendo* that Silva could initiate arbitration between the Union and Pioneer,[4] there are numerous other problems with the arbitration agreement in this context. For example, the CBA's arbitration agreement does not grant Silva the right to be represented by an attorney, or even to present evidence on her own behalf. See Labor Rule 20 ("[a]ny party may be represented by counsel or other authorized representative") (emphasis added). The only protection for an affected employee is Labor Rule 22, which allows that "[p]ersons having a direct interest in the arbitration are entitled to attend hearings," but this attendance right does not include the right to counsel or even to present evidence (emphasis added). Because only parties to arbitration may be represented by counsel or present evidence, the labor arbitration rules – the rules required under the CBA – are unsuitable for individual cases.

Furthermore, the process of appointing a labor arbitrator is controlled by the parties, and the employee is excluded from the selection process. For example, only the Union and the Employer, as parties, can decline the appointment of a particular individual arbitrator. See Labor Rule 12. Therefore, while the Employer would have the power to strike the name of an arbitrator to whom it objected, Silva would have no such power. See McMullen v. Meijer, Inc., 355 F.3d 486 (6th Cir. 2004) (arbitration agreement unenforceable where employer had exclusive control over selection of arbitrators).

---

[4] In fact, like the CBA, the AAA's Labor Rules do not allow a non-party to initiate an arbitration. See Labor Rules 7 and 9 (both stating that the process may be initiated by a party to the CBA), Act. for Dec. Judg, Ex. B.

The labor rules do not even guarantee the appointment of an arbitrator who understands employment law. Labor arbitrators are drawn from a pool of arbitrators who need not demonstrate an understanding of employment law, nor need they be attorneys. See Qualification Criteria for Admittance to the AAA Labor Panel, Ex. D to Act. for Dec. Judg. This must be compared to the AAA's Employment Arbitration Rules (see Act. for Dec. Judg., Ex. C), which requires that "arbitrators serving under these rules shall be experienced in the field of employment law." Emp. Rule 12. Labor Rule 12 even allows for the involuntary appointment of an arbitrator if the parties cannot agree on one. This runs the very real risk of the appointment of an arbitrator, from the labor roster (many of whom are not even attorneys), with no employment law background, or even an understanding of discrimination law. Furthermore, because the employer has the unilateral power to narrow the field of arbitrators, it has the power to tilt the selection in its favor. Given that many labor arbitrators are not even attorneys, this could be disastrous for a discrimination plaintiff such as Silva.

Other protections requisite to the enforceability of a valid individual employment dispute arbitration clause are noticeably absent from the AAA's Labor rules – but present, by contrast, in its Employment Rules. For example, Employment Rule 9 allows the arbitrator to order discovery, "by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." No such discovery whatsoever is allowed under the Labor Rules. See Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999) (arbitration agreement unenforceable where employee could not conduct discovery); Armendariz v. Foundation Health Psychcare Services, Inc., 6 P.3d 669, 684 (Cal. 2000) (discrimination plaintiffs are "entitled to discovery [in arbitration] sufficient to adequately arbitrate their

statutory claim" of discrimination); Cole, supra (identifying the availability of reasonable discovery as a requisite to the enforcement of an employment arbitration agreement). While the scope of discovery in arbitration need not be as fulsome as that in federal court, see Gilmer, 500 U.S. at 31, the utter unavailability of discovery to Silva here renders the clause unenforceable.

Under the CBA, an employee who has suffered sexual harassment must decide whether to file a grievance regarding the incident within fourteen days. CBA, Article 37.3. As interpreted by Pioneer, the decision about whether to file a grievance is conclusive for the remainder of the litigation. See CBA, Article 21. Pioneer's interpretation of the CBA thus functionally shortens the statute of limitations for statutory discrimination claims from the statutory period of 300 days to 14 days, by forcing employees to make major litigation choices about individual statutory claims that may deprive them of a forum for their claim (under Pioneer's interpretation) within a 14-day period. See M.G.L. c. 151B, § 5 (300-day statute of limitations).

The statute of limitation for discrimination claims under c. 151B, § 5 is clearly unwaivable. The Massachusetts discrimination statute serves the exact same purpose as Title VII, eradicating discrimination, and Title VII's statute of limitations has been found to be unwaivable. See, e.g., Krahel v. Owens-Brockway Glass Container, Inc., 971 F.Supp. 440, 452-53 (D.Oregon 1997) (collective bargaining agreement that mandates arbitration of Title VII claims and limits the statute of limitations to three days was unenforceable because it overrode Congress's 300-day statute of limitations). The CBA provision, as interpreted by Pioneer, is unenforceable because it functionally shortens the statute of limitations. The First Circuit has similarly found that a provision requiring an employee to give notice of consumer protection claims within one year of the underlying incident functionally shortened the statutory four year statute of limitations for such claims under M.G.L. c. 93A. Anderson v. Comcast, Co., 500 F.3d

66, 76 (1st Cir. 2007). Under Pioneer's interpretation, if an employee chooses to file a grievance, that decision closes off the employee's ability to seek redress through the MCAD and the courts.

Pioneer might respond that, despite the short window available to elect a remedy, the election was freely made by Silva. However, Silva's supposed "choice" was not the acceptable choice between litigating her claim, or arbitrating it. In fact, her choice presented the unacceptable alternative of litigating her claim, or filing a grievance and gambling that the Union might seek arbitration. As discussed in more detail above, the Union has no duty to take any particular grievance to arbitration, and may decline to do so only if the decision is not arbitrary, or motivated by bad faith or discriminatory reasons. Williams v. Sea-Land Corp., 844 F.2d 17, 19 (1st Cir. 1988). Assuming an employee such as Silva is within the statutory limit to bring a claim, she should be allowed to do so if her case is not arbitrated.

The arbitration provision of the CBA is unenforceable in this context. This is hardly a surprise, given that it was not designed to provide a forum for individual claims of statutory discrimination. It was agreed to approximately two years before 14 Penn Plaza was decided, when it was broadly understood that a CBA could not lawfully contain such a waiver. See 14 Penn Plaza (Souter, D., dissenting) ("...every Court of Appeals save one [the 4th Circuit] has read our decisions as holding to" the position that such waivers were unlawful). With that understanding in mind, the parties designed their arbitration process to serve their needs in arbitrating labor disputes, not employment cases. The arbitration process negotiated by the Union and the Employer (i.e., the parties) works well to resolve labor disputes raised under the CBA, but it is woefully inadequate to vindicate an employee's statutory rights.

   C. <u>Massachusetts law prohibits a collective bargaining agreement from requiring individuals to arbitrate their personal discrimination claims</u>

Nor can Pioneer resurrect its waiver claim by arguing that that Massachusetts law requires dismissal of Silva's lawsuit. In direct contradiction to Pioneer's argument, the SJC has squarely interpreted G.L. c. 151B as disallowing a union and employer from negotiating a CBA that requires an individual member of the bargaining unit from arbitrating personal statutory claims. <u>Blanchette v. Sch. Cmte. of Westwood</u>, 427 Mass. 176, 183 (1998).

Under state law, an employee does "not waive her right to pursue her statutory civil rights claim in a judicial forum merely by being a member of a union that was covered by a collective bargaining agreement. Although a union has the power to waive statutory rights related to collective activity, rights of the kind protected by G.L. c. 151B, § 4, which are of a personal, and not merely economic, nature are <u>beyond the union's ability to bargain away</u>." <u>Blanchette v. Sch. Cmte. of Westwood</u>, 427 Mass. 176, 183 (1998) (emphasis added). "While a union undeniably has the power to waive statutory rights related to collective activity, such as the right to strike, certain other statutory rights stand on a different footing. … To hold otherwise would defeat the legislative purpose that each employee be free from discrimination in employment practices." <u>Sch. Cmte. of Brockton v. MCAD</u>, 337 Mass. 392, 399 (1979); <u>see also</u> <u>City of Boston v. MCAD</u>, 39 Mass. App. Ct. 234, 238 (1995) ("an independent statutory right … is … paramount to the privately arrived at collective bargaining agreement").[5]

Pioneer finds no support for its argument in <u>Warfield v. Beth Israel Deaconess Medical Center, Inc.</u>, 454 Mass. 390 (2009). Pioneer acknowledges that <u>Warfield</u> did not involve the question before this Court – namely whether a collectively bargained arbitration clause is

---

[5] Pioneer seeks to distinguish <u>Blanchette</u> on the ground that that case involved a public-sector CBA, not one in the private sector. Although true as a factual matter, that factor played no role in the Court's decision. Chapter 151B confers identical rights on public-sector and private-sector employees.

16

enforceable against an individual – and Pioneer can only note that Warfield cited to 14 Penn Plaza. However, Warfield cited 14 Penn Plaza only for the proposition that "intent to arbitrate statutory employment discrimination claims should be clearly stated in order to be enforced," which is not the issue here. Warfield, 454 Mass. at 401. The SJC also noted that "we are aware of the significant differences between collective bargaining agreements and individual employment contracts." Id. Given this acknowledged difference, there can be no basis to assume that the SJC somehow overruled Blanchette and Brockton *sub silentio* in Warfield.

A finding of waiver could occur only by application of federal law. However, for the reasons above, federal law also forbids dismissal of this case.

D. If the Court determines that interpretation of the CBA is required, the Motion to Dismiss must still be denied

Pioneer's claim is founded on its interpretation of the CBA, a point it conceded when it wrote that Local 615 filed a grievance concerning Pioneer's Motion to Dismiss because it is "unhappy with Pioneer's interpretation of the CBA." Memo in Supp. of Motion to Stay, pg. 2 (emphasis added). Local 615 strongly disputes Pioneer's interpretation, for in its view, the parties' use of the phrase "grievance and arbitration" in Article 21.3 required, as a prerequisite to an effective election of arbitration (and, thus a waiver of court), that the employee must have not only filed a grievance, but elected arbitration and been granted access to arbitration by the Union. In Article 37, the grievance and arbitration procedures are separate. For example, only an employee may file a grievance (Article 37.2), and only the Union can proceed to arbitration (Article 37.3 (Step 4.a). Thus, it is not possible for an employee's election of remedies to be complete unless and until both she and Local 615 have invoked arbitration. (Otherwise, the CBA would operate as a waiver of Silva's substantive rights, a result that is untenable under federal and state law, as discussed supra.)

17

Moreover, the stated purpose of this election-of-remedies provision is "to prevent, through this Article, unnecessary litigation of disputes in multiple forums and to encourage the consolidation of proceedings into a single forum." CBA, Article 21.4. When a grievance remains pending at the lower stages of the grievance procedure, the grievance is not yet being litigated, and thus Local 615's interpretation is consistent with the stated purpose. Only when the case is submitted to arbitration has the litigation begun; the prior grievance meetings are negotiations. In this case, the Union declined to bring the grievance to arbitration, which was the Union's lawful prerogative to do.

The Court needs to reach the disputed interpretation of the CBA only if does not accept the Union's arguments above. In that event, however, the motion to dismiss must be denied because the contract interpretation question raises factual disputes[6] not properly presented through a motion to dismiss, and in any event, these questions must be determined by an arbitrator, rather that this Court.

1. Pioneer must arbitrate disputes over interpretation of the CBA, including whether Pioneer and Local 615 agreed that individuals must submit statutory claims of discrimination to arbitration

It is well settled that federal judges should refrain from engaging in interpretation of a CBA, even where the Court is confident about the meaning. See, e.g., Int'l B'hood of Elec. Workers, Local 1228, AFL-CIO v. WNEV-TV, N.E. Telev. Corp., 778 F.2d 46, 47 (1st Cir. 1985) (federal court "over-extended itself in considering and deciding the merits of the underlying dispute" raised under a CBA). This Court should not allow Pioneer to seek an

---

[6] An arbitrator determining the meaning of a disputed contract term would normally consider bargaining history, proposals exchanged between the parties and other extrinsic evidence. See Frank Elkouri and Edna Elkouri, How Arbitration Works 427-84 (6th ed. 2003). At arbitration, Local 615 intends to present such bargaining history and contract language proposals, as well as extrinsic evidence showing that at the time the clause was adopted such waivers were unenforceable in this and virtually every other circuit, and that the Union had no intention to agree to an unlawful waiver. The state of the law forbade labor unions from waiving the rights of individual members to waive statutory claims in court. See e.g. Air Line Pilots Ass'n, Intern. v. Northwest Airlines, Inc., 199 F.3d 477, 484 (D.C. Cir. 1999) (surveying state of the law).

interpretation of this question here, and should instead defer to the arbitral resolution of the meaning of the CBA as it would in any other contract interpretation dispute.

Conflicts over where authority to interpret a CBA lies typically arise where a union seeks to arbitrate its grievance, and the employer refuses on the ground that the CBA clearly does not support the union's argument, and that any such arbitration would therefore be futile. However, <u>courts, therefore, have no business weighing the merits of the grievance, considering</u> whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." <u>Steelworkers v. American Mfg. Co.</u>, 363 U.S. 564, 567-568 (1960) (emphasis added).

This case arises in a somewhat different posture, but the outcome should be no different. The Union has brought to arbitration a grievance against Pioneer, alleging that it is violating the CBA by advancing its incorrect interpretation of the CBA. Whether Local 615 and Pioneer agreed that a bargaining unit employee's right to sue for sexual harassment is waived by filing a grievance is a question of contract interpretation. If this Court grants Pioneer's motion to dismiss based on its claims as to the meaning of its agreement with the Union, the effect would be to deny the Union its right to have that question decided by an arbitrator.

Therefore, the Court should deny the Motion to Dismiss and allow an arbitrator to interpret the collective bargaining agreement. If the arbitrator finds no such agreement between the Employer and the Union, then Pioneer will be precluded by the CBA from raising this argument in this Court because the decision "shall be final and binding upon the grievant, the Employer and the Union," and the Employer is a party to the CBA. Article 37.3.

IV. Conclusion

Local 615's reading of the CBA is the correct one. The Court need not reach this question, however, for even if Pioneer's interpretation were correct, the Court should determine that the waiver Pioneer urges is not clearly and unmistakably drafted, and that it would result in an unlawful substantive waiver, either of which defeats Pioneer's motion to dismiss.

If interpretation of the CBA is required, the motion to dismiss should still be denied as it requires a factual determination not appropriately decided on a motion to dismiss, and because the interpretation of the CBA must be left to labor arbitration as agreed to by the parties.

                                            Respectfully submitted,

                                            SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 615

                                            By its attorneys,

                                            /s/ James A.W. Shaw
                                            Indira Talwani, Esq., BBO# 645577
                                            James A.W. Shaw, Esq., BBO# 670993
                                            SEGAL ROITMAN, LLP
                                            111 Devonshire St., 5th Floor
                                            Boston, MA 02109
                                            Phone: (617) 742-0208
                                            Fax: (617) 742-2187
                                            E-mail: jshaw@segalroitman.com

Dated: October 8, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 8, 2010.

                                            /s/ James A.W. Shaw