UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRICILLA de SOUZA SILVA, )<br>)<br>      Plaintiff, )<br>and )<br>)<br>SERVICE EMPLOYEES INTERNATIONAL )<br>UNION LOCAL 615, )<br>      Intervenor-Plaintiff )<br>)<br>v. )<br>)<br>PIONEER JANITORIAL SERVICES, INC., )<br>)<br>      Defendant. ) | Civil Action No. 10-cv-11264JGD<br><br>Leave to file granted: 10/25/10 |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STAY**

      The Union's opposition flows from the mistaken assumption that "[t]his case is an ordinary labor grievance." Opp. at 9. Quite to the contrary, the posture of this case is far from ordinary and the dispute is not based upon a labor grievance. While the Union has attempted to contrive a labor dispute in hopes of divesting this Court of jurisdiction to consider the issues that are properly before it in Pioneer's Motion to Dismiss, this does not change the fact that this is a discrimination case. Accordingly, the Norris-LaGuardia Act's ("NLA") heightened standard for injunctions of labor disputes does not apply.

      Moreover, the stay requested by Pioneer is appropriate because it has never consented to arbitration concerning the manner in which it may defend a discrimination lawsuit. While the Union asserts that its grievance concerns "the meaning of a term and condition of employment," the relief it seeks – withdrawal of Pioneer's motion to dismiss – makes clear that it is not. Consequently, the Union's claim that its purported grievance is substantively arbitrable, like its

request for fees, is wholly without merit, and the arbitration demanded by the Union should be stayed until the Court acts upon Pioneer's Motion to Dismiss.[1]

## I.     The NLA Does Not Apply

By its terms, the NLA only applies only to "case[s] involving or growing out of a labor dispute." 29 U.S.C. s 101.[2] While the term labor dispute has generally been interpreted broadly, it has apparently never been interpreted to involve a situation such as this where the underlying dispute concerns an individual's claim under an anti-discrimination statute. Indeed, it is beyond serious dispute that this case does not involve the traditional labor activity that the NLA was intended to protect, such as "lawful strikes, peaceful picketing and union organizing." See Tejidos de Coamo, Inc. v. International Ladies' Garment Workers' Union, 22 F.3d 8 (1st Cir. 1994).

In determining whether the NLA is applicable to a particular dispute, some courts have considered whether application of the NLA would be consistent with the statutes purpose. For example, in holding that the NLA does not apply to injunctions seeking to compel arbitration, the Supreme Court noted that this type of dispute is not "a part and parcel of the abuses against which the [NLA] was aimed." See Textile Workers Union of America v. Lincoln Mills of Ala., 353 U.S. 448, 458 (1957); see also Lukens Steel Company v. United Steel Autoworker of America, 989 F.2d 668, 680 (3 rd Cir. 1993) (Cowens, J, dissenting) (arguing that the NLA

---

[1] Since the Motion to Stay Arbitration was filed, the Court has scheduled argument on Pioneer's Motion to Dismiss for November 30th and the American Arbitration Association has indicated that it does not intend to schedule the arbitration until March of 2011. Accordingly, this motion would likely be rendered moot if the Court were to act upon Pioneer's Motion to Dismiss before March 2011.

[2] A labor dispute is defined as "any controversy concerning terms or conditions of employment, or concerning the association or representations of persons negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c). As argued below, the Union's purported grievance does not constitute a "term or condition of employment."

should not apply to a dispute regarding arbitrability because it "does not implicate any of the basic freedoms that the NLA seeks to protect.").

In <u>Tejidos de Coamo, Inc.</u>, the case principally relied upon by the Union, the First Circuit Court of Appeals considered a similar argument in determining whether an order staying arbitration was subject to the NLA. 22 F.3d 8, 13 (1st Cir. 1994). Although the court ultimately found that "on balance" the NLA was applicable to that dispute, the arbitration in that case involved issues related to alleged strike and picketing misconduct. <u>Id.</u> at 9, 13. Thus, the underlying dispute in that case involved a traditional labor dispute more akin to what the NLA was intended to protect than the instant discrimination suit. See <u>id.</u>

The same is true for all of the cases cited in the Union's opposition – each involves arbitration of a traditional labor dispute, such as striking, see <u>Lukens Steel Company</u>, 989 F.2d at 671, the use of union workers, see <u>In re District No. 1-Pacific Coast Dist., Marine En'rs' Beneficial Ass'n</u>, 723 F.2d 70 (D.C. Cir. 1983), and the obligation to engage in good faith collective bargaining, see <u>AT&T Broadband v. International Brotherhood of Electrical Workers</u>, 317 F.3d 758 (7th Cir. 2003). The Union does not cite – and there does not appear to be – any decision in which a court has held that an individual's claim under and anit-discrimination statute qualifies as a "labor dispute" subject to the NLA.

Under the circumstances of this case, it is difficult to conclude that the Union's purported grievance is a labor dispute subject to the NLA. As noted above and discussed in Pioneer's Memorandum in Support of Motion to Stay, the Union has contrived its "grievance" in an attempt to divest this Court of jurisdiction to consider Pioneer's motion to dismiss. Indeed, the relief requested by the Union in its demand for arbitration – that Pioneer be forced to withdraw its motion to dismiss – focuses solely upon Pioneer's litigation of this discrimination case.

3

Accordingly, the Union's efforts to re-frame this case as a dispute between the Union and Pioneer over a "term or condition of employment" must fail, and this dispute is not governed by the NLA.[3]

## II.   The Arbitration Should be Stayed

Assuming that the NLA does not apply to this case, the Union offers just two arguments in opposition of the requested stay: (1) that the dispute is substantively arbitrable and (2) that the request for stay is premature. For the reasons discussed below, both of these arguments must fail and the stay should be granted.

### A.   The Dispute is Not Substantively Arbitrable.

In "reempshasiz[ing] the proper framework for deciding when disputes are arbitrable," the Supreme Court has recently observed that "the first principle that underscores all of our arbitration decisions [is that] [a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes – *but only those disputes* – that the parties have agreed to submit to arbitration." Granite Rock Company v. International Brotherhood of Teamsters, 130 S.Ct. 2847, 2856 (2010) (internal citations and quotations omitted) (emphasis in the original). As argued in Pioneer's Motion to Stay Arbitration, there is no provision in the CBA providing for mandatory arbitration of issues related to how Pioneer proceeds in litigation. Indeed, the Union still has not even attempted to point to any provision in the CBA that would evidence an agreement on behalf of Pioneer to permit an arbitrator to determine the appropriateness of Pioneer's motion to dismiss. Accordingly, applying the Supreme Court's "first principle" this Court should conclude that Pioneer has not consented to arbitrate the instant dispute and, therefore, the Union's purported grievance is not arbitrable.

---

[3]   Pioneer does not – and never has – sought to enjoin the arbitration under the NLA. Accordingly, if the Court concludes that the NLA applies to this case, the Motion to Stay Arbitration should be denied.

Although the Union argues that Pioneer has conceded that the Union's purported grievance is arbitrable, that is simply not true. There is no dispute that the Union's <u>motivation</u> for filing its purported grievance is its discontent with Pioneer's interpretation of the unambiguous terms of the CBA. This is not to say, however, that the Union's purported grievance actually seeks to resolve a dispute between the Union and Pioneer. Rather, as noted, the Union has attempted to contrive a grievance for the sole purpose of divesting this court of jurisdiction over an issue that is plainly governed by recent Supreme Court precedent. Thus, while there may be a dispute here between Plaintiff and Pioneer concerning the meaning of the CBA, the dispute between Pioneer and the Union is – as its requested relief demonstrates – about Pioneer's litigation strategy in this case. As Pioneer has not consented to arbitrate that issue, it is not substantively arbitrable.

It also should be noted that the CBA did not even provide the Union with the right to file its purported grievance. Article 37.2 provides that [a] grievance may only be filed by the adversely affected employee(s) covered by the Agreement, except as provided by [this Article]. The only time that a Union is permitted to file a grievance in under Article 37.6 where "an employee or group of employees…cannot raise it." The Union has provided no argument for why Plaintiff would have been unable to file a grievance on her own behalf in this matter and, consequently, even its purported grievance is improper.

Lastly, the Union is incorrect in asserting that this case is similar to <u>Kravar v. Triangle Service, Inc</u>. The issue of substantive arbitrability was not involved in that case as the parties agreed to arbitrate whether the CBA at issue mandated arbitration of statutory claims. <u>See</u> Doc. 83 (July 10, 2009), attached as Exhibit C to the Union's Opposition to Motion to Stay, at 4. Similarly, the Union's contention that the Second Circuit Court of Appeals decided to hold the

appeal in abeyance because it believed that the issue should be decided through labor arbitration is unfounded.  The docket entry relied upon by the Union does not order that the matter be held in abeyance and does not reflect "that disputes over the interpretation of a CBA are resolved by arbitrators, not by Courts.  As set forth in Pioneer's Reply in Support of Motion to Dismiss, courts have a duty to "enforce strictly" the unambiguous provisions of a CBA.  <u>Gaston v. Teamsters Local 600, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America</u>, 614 F.3d 774, 779 (8th Cir.2010) ("When the terms of a CBA are unambiguous, they are to be 'enforced strictly.'"); <u>Contempo Design, Inc. v. Chi. & Ne. Ill. Dist. Council of Carpenters</u>, 226 F.3d 535, 546 (7th Cir.2000) (en banc) (same).

        B.      <u>The Request for a Stay is Not Premature.</u>

The Union is also incorrect in arguing that Pioneer's Motion to Stay Arbitration was premature.  Although the Union suggests that Pioneer's motion seeks "a declaration of rights against [the Union]," that is simply not the case.  Pioneer merely seeks to maintain the status quo so that this Court can consider the Motion to Dismiss that is already properly before it.  As the Union had filed a demand for arbitration and the American Arbitration Association was in the process of scheduling that arbitration, Pioneer's motion was both appropriate and timely.[4]

Similarly, the fact that Pioneer did not confer with the Union prior to filing its motion does not require that it be denied.  At the time that Pioneer filed its motion, the Union was not yet a party but had a motion pending to be permitted to intervene.  Thus, while the text – and more so the spirit – of Local Rule 7.1 likely dictates that counsel for Pioneer should have

---

[4]     While the Union seems to insist that Pioneer's motion to stay arbitration was premature in light of the fact that the arbitration will now likely be scheduled in March 2011, the Union ignores the fact that – even after the motion to stay was filed – the Union insisted that the arbitration be scheduled immediately and without waiting for the Court to act upon the motion to stay. See Letter from James Shaw, attached hereto as Exhibit 1.

6

conferred with counsel for the Union before filing the motion to stay, it did not occur to Pioneer's counsel to do so because of the unusual posture of the case.

In any event, this oversight did not result in any prejudice to the Union. Had the Union believed that the issues could have been effectively narrowed through consultation, it was free to contact counsel for Pioneer to do so. Indeed, the parties have been in communication regarding other related matters. The parties have not effectively narrowed the issues in dispute because, as the Union's opposition and this reply brief make clear, the dispute between the parties cannot be resolved without action by the court. While the lack of prejudice alone likely does not excuse the oversight, it offers some support for excusing it. Thus, in light of the rather unique circumstances and the lack of prejudice, Pioneer respectfully submits that this oversight is excusable, and should not be fatal to its motion

### III. The Union's Request for Fees Must be Denied

As an initial matter the Union's request for fees must be denied because it does not comport with the "stringent procedural requirements" of Federal Rule of Civil Procedure 11. See Greeney v. Center for Human Development, Inc., 2010 WL 2925920, 5 (D.Mass. 2010). Rule 11 requires that "[a] motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2); id. Additionally, the Rule's so-called "safe-harbor provision" requires that the motion be served upon the offending party at least 21 days before being filed with the Court. Id. The Union has complied with neither of these requirements, and therefore, its request for fees must be denied.

More importantly, however, none of the arguments made by Pioneer have been frivolous. Indeed, as set forth above, Pioneer maintains that it is entitled to an order staying the arbitration. Even if the Court were to reject these arguments, they certainly constitute "legal contentions

[that] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law" for which sanctions are not permitted.  Id.

Similarly, there is no merit to the Union's assertion that Pioneer acted in bad faith by insisting that the American Arbitration Association withhold scheduling arbitration until after the Court has had the opportunity to consider the motion to stay.  While the Union complains that this amounts to Pioneer exercising "self-help," it is nothing of the sort.  Pioneer has submitted a valid request for relief from the Court and is entitled to insist that this request for relief be considered before it is rendered moot.  The Union's assertion that this request is "eggregious and in bad faith" is somewhat ironic in light of the Union's effort to exercise "self-help" by forcing Pioneer to arbitrate an issue that it has not agreed to arbitrate.  In any event, Pioneer and its counsel have acted appropriately throughout this litigation, and there is no basis for granting the Union's request for sanctions.

Lastly, the Union's argument that sanctions are appropriate for violation of Local Rule 7.1.  As discussed above, even if the Rule was technically violated through counsel's inadvertant oversight, that oversight is excusable in this instance because of the unique posture of this case.  Accordingly, this too does not provide an appropriate basis for granting the Union its fees in this case, and the request for sanctions should be denied.

## Conclusion

For the reasons set forth above and in Pioneer's Memorandum in Support of Motion to Stay Arbitration, Pioneer respectfully requests that this Court grant its Motion and stay the arbitration demanded by the Service Employees International Union, pending as American Arbitration Assn. Case No. 11 300 01755 10.  Pioneer further requests that the Union's request for fees be denied.

Respectfully submitted,

                        PIONEER JANITORIAL SERVICES, INC.,
                        By its attorneys,

Dated: October 22, 2010    By:   */s/ Mark J. Ventola*
                        Mark J. Ventola, Esq. (BBO# 549570)
                        Sheehan Phinney Bass + Green, PA
                        255 State Street, 5th Floor
                        Boston, MA 02109
                        (617) 897-5600

## CERTIFICATE OF SERVICE

I, Mark J. Ventola, do hereby certify that on this 22nd day of October, 2010, service of the foregoing was made upon all counsel of record by the Court's CM/ECF system:

                        */s/ Mark J. Ventola*
                        Mark J. Ventola