UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PRICILLA de SOUZA SILVA,      )
      )
      Plaintiff, and      )
      )
SERVICE EMPLOYEES      )      CIVIL ACTION
INTERNATIONAL UNION, LOCAL 615,      )      NO. 10-11264-JGD
      )
      Intervenor-Plaintiff,      )
      v.      )
      )
PIONEER JANITORIAL SERVICES, INC.,      )
      )
      Defendant.      )

## MEMORANDUM OF DECISION AND ORDER
## ON DEFENDANT'S MOTION TO DISMISS

March 3, 2011

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Pricilla de Sousa Silva ("Silva"), is employed by the defendant

Pioneer Janitorial Services, Inc. ("Pioneer" or the "Employer") and is a member of the

plaintiff-intervenor Service Employees International Union, Local 615 (the "Union").

Silva contends that her supervisor sexually harassed her, as a result of which she filed a

grievance.  The Union, the only party with the authority to do so, did not pursue the

grievance through arbitration.  Silva then filed a complaint with the Massachusetts

Commission Against Discrimination ("MCAD"), and eventually commenced an action in

Superior Court, raising claims of sexual harassment and retaliation under Mass. Gen.

Laws ch. 151B (Counts I and II), and negligent hiring, supervision and/or retention (Count III).  The defendant Employer subsequently removed the action to this court on the basis of federal question jurisdiction.

This matter is presently before the court on Pioneer's Motion to Dismiss the complaint.  Relying on 14 Penn Plaza LLC v. Pyett, 129 S. Ct. 1456 (2009), Pioneer contends that by commencing a grievance procedure, Silva waived her right to litigate her sexual harassment claims pursuant to the terms of the parties' collective bargaining agreement ("CBA").  Silva and the Union both oppose the motion, arguing, based on various theories, that since the Union controlled the decision not to arbitrate her grievance, Silva cannot be found to have waived her right to litigate her claims.  This court agrees, and for the reasons detailed herein, Pioneer's Motion to Dismiss (Docket No. 5) is DENIED.[1]

## II.  STATEMENT OF FACTS

The following facts are undisputed unless otherwise indicated, and are limited to those which are relevant to the motion to dismiss.

Pioneer provides janitorial services at various locales, including the Berklee School of Music in Boston's Back Bay.  Complaint (Docket No. 1-3) ("Compl.") ¶¶ 2, 5. Silva began working as a janitor there in 2002, and is a member of Local 615 of the Service Employees International Union.  Id. ¶ 5.  Mick da Silva became her supervisor in

---

[1]  This court has considered the myriad of arguments raised by the parties in their briefs, even if not addressed herein.

-2-

2006.  Id. ¶ 7.  According to Silva, he engaged in egregious sexual harassment directed to

her on a regular basis over an extended period of time.  Id. ¶¶ 7-15.

In December 2008, Silva was suspended for three days, allegedly for not

completing work.  Id. ¶ 27.  On or about December 15, 2008, Silva filed a grievance

through the Union, alleging, in part, sexual harassment.[2]  Therein, she referenced

"Articles 25, 21 (no discrimination) and all pertaining Articles" of the CBA, and

requested back pay for the three-day suspension, a halt to the Supervisor's ongoing sexual

harassment, and that the Supervisor be removed from the worksite immediately.  The

record is unclear as to what, exactly happened next.  It is undisputed, however, that, as

detailed below, there was no substantive hearing on the sexual harassment claim, and the

Union did not pursue the matter into arbitration.

### The CBA[3]

The CBA prohibits discrimination.  In particular, it provides in relevant part in

Article 21, the "No Discrimination" provision, as follows:

> 21.2   The parties agree that neither shall discriminate against any
> employee on the basis of race, sex, religion, age, national origin,
> physical or mental disability, sexual orientation, or veteran status
> and in addition *neither party shall sexually harass – as that term is*

---

[2]  A copy of the grievance is attached to Silva's Memorandum in Opposition to
Defendant's Motion to Dismiss (Docket No. 20) as Ex. 1 (the "Grievance").

[3]  A copy of the CBA is attached to Pioneer's Memorandum in Support of its Motion to
Dismiss (Docket No. 6) as Ex. A.  Silva referenced Article 25 (management rights) and Article 21
(no discrimination) in her Grievance.  Since there is nothing in Article 25 which is at issue in the
matter before this court, it will not be addressed further.

*defined under applicable law – any employee.* The parties further agree that an employee who chooses to pursue any claims arising under Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Aged Discrimination and Employment Act, *Massachusetts Fair Employment Practices Act and/or any discrimination claims arising under any similar local, state or federal rules, statutes and/or regulations ("discrimination claims")* shall do so in accordance with this Article.

21.3 *The employee may, at his or her election, pursue such discrimination claims either (1) through the grievance and arbitration procedure (Article 37), or (2) through any other forum available at law,* including, but not limited to, any state or federal court action and/or any state or federal fair employment practices administrative agency. *Once an employee has pursued in any forum a particular discrimination claim, or related claim, such forum shall be the sole and exclusive forum for such claim.* Arbitrators shall apply appropriate applicable law in rendering decisions regarding discrimination claims.

21.4 *It is the intent of the parties to prevent, through this Article, unnecessary litigation of disputes in multiple forums and to encourage the consolidation of proceedings into a single forum.*

(Emphasis added).

The "Grievance Procedure" is detailed in Article 37 of the CBA. It requires, except in the case of a termination or suspension, that a written grievance be submitted to the Employer "within fourteen (14) calendar days after the grievant knew or had reason to know of the incident giving rise to the grievance" or the grievance will not be considered. CBA § 37.3. The CBA details a multi-step procedure in § 37.3 as follows:

Step 1 provides for an informal resolution procedure. However, the employee must submit a written grievance within 14 days of the incident, and the Employer must

submit a written answer within 10 days. The Step 1 grievance is to be presented to the designated immediate supervisor.

Step 2 requires that another written grievance be presented to the appropriate site manager or designated supervisor of the Employer within 10 calendar days after the Employer's answer or the date when the answer was due. The Employer "may hold a meeting on the grievance" and is to provide a written answer to the Step 2 grievance "within ten (10) calendar days after a meeting was held or after receipt of the grievance if no meeting was held." In the instant case, the Union apparently bypassed the Step 1 process and requested a Step 2 hearing. See Supplemental Affidavit of Frank Gello (Docket No. 32-1) ("Supp. Aff. Gello") at ¶ 4. It does not appear that Pioneer provided any written response to Silva's Grievance at any stage. Pioneer contends that although the Union requested a Step 2 meeting, no meeting with respect to Silva's December 15th Grievance was ever held, as a meeting scheduled for December 29, 2008 was cancelled, allegedly by the Union. Id. ¶¶ 3-5. According to Pioneer, it heard nothing further about the December Grievance, and assumed that "the Union 'dropped' the matter in the sense that it took the grievance no further and Pioneer's denial was upheld." Id. ¶ 5.

Step 3 of the grievance procedure requires that the grievance again be presented to the Employer, this time to the Labor Relations, Human Resource Department or the Principal Officer of the Employer, or his/her designee, within 10 calendar days after the Employer's response to the Step 2 grievance or the date when the response was due. In Step 3, the "Employer shall hold a meeting on the grievance within ten (10) calendar days

after receiving it" and is to provide a written response within 10 days after either the meeting or the date when the grievance was received. As noted above, in the instant case the Union did nothing more than request a Step 2 hearing, which was never held.

If no resolution is reached at Step 3, the grievance procedure provides in relevant part as follows:

> If the grievance is not resolved at Step 3, it must be referred to arbitration *by the Union* within thirty (30) calendar days after receipt of the Employer's response or date on which that decision was due, whichever is earlier. A demand for arbitration must be served in writing *by the Union* simultaneously on the American Arbitration Association ("AAA") and the Employer within the period as a condition for processing the demand....

(Emphasis added). The parties agree that only the Union could refer the matter to arbitration and that Silva could not have acted without the Union. As noted above, the Union did not pursue any arbitration on Silva's behalf.

## Sexual Harassment Policy

In addition to the prohibition against sexual harassment in the CBA, Pioneer also had a sexual harassment policy.[4] The Policy provides that an employee may make either an oral or written complaint of sexual harassment by contacting a named Senior Vice President. Policy at Art. III. Pursuant to the Policy, the Employer is committed to investigating the complaint, and then taking disciplinary action if appropriate. Id. at Arts. IV, V. The Policy provides further:

---

[4] A copy of the sexual harassment policy is attached to the Supplemental Affidavit of Frank Gello (Docket No. 32-1) as Ex. B (the "Policy").

In addition to the above, if you believe you have been subjected to sexual harassment, you may file a formal complaint with either or both of the government agencies set forth below [EEOC and MCAD]. *Using our complaint process does not prohibit you from filing a complaint with these agencies.* Each of the agencies has a short time period for filing a claim (EEOC - 180 days; MCAD - 6 months).

Id. at Art. VI (emphasis added).

### Silva's Litigation

As noted above, Silva filed her Grievance on or about December 15, 2008 and it never reached the Step 2 hearing stage, if it was addressed at all. On or about July 28, 2009, she filed a discrimination charge with the MCAD which was subsequently dismissed. On June 2, 2010, Silva filed her complaint in the Massachusetts Suffolk Superior Court. Compl. Pioneer removed the case to this court on July 28, 2010 on the grounds that the interpretation of the CBA is governed by federal law. Notice of Removal (Docket No. 1) ¶ 4. The Union intervened on September 22, 2010. Intervenor Compl. (Docket No. 15).

It is Pioneer's contention that the complaint must be dismissed because Silva waived her right to litigate by filing a grievance containing a claim of sexual harassment and, thereby, electing to proceed under the CBA instead of through litigation. Pioneer Mem. in Supp. of Mot. to Dismiss (Docket No. 6) at 1.

Additional facts will be provided below where appropriate.

# III.  DISCUSSION

## A.    Penn Plaza

In support of its motion to dismiss, Pioneer relies on the United States Supreme Court's decision in 14 Penn Plaza LLC v. Pyett, 129 S. Ct. 1456 (2009).  Therein, the Court held "that a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate [employment discrimination] claims is enforceable as a matter of law."  Id. at 1474.  While recognizing that "federal antidiscrimination rights may not be prospectively waived," the Court held that "[t]he decision to resolve [discrimination] claims by way of arbitration instead of litigation does not waive the statutory right to be free from workplace . . . discrimination; it waives only the right to seek relief from a court in the first instance."  Id. at 1469 (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 1652, 114 L. Ed. 2d 26 (1991)).  This holding is premised on the Supreme Court's conclusion that the "remedial and deterrent function" of the discrimination laws will be met "[s]o long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum[.]"  Gilmer, 500 U.S. at 28, 111 S. Ct. at 1653 (internal punctuation and quotations omitted).  The Penn Plaza Court expressly left open the issue presently before this court, namely, whether a CBA which allows a union to block arbitration of employees' anti-discrimination rights impermissibly "operates as a substantive waiver of their . . . rights."  Penn Plaza, 129 S. Ct. at 1474.  See also id. at 1481 (Souter, J. dissenting) ("On one level, the majority opinion may have little effect, for it explicitly reserves the question whether a CBA's

waiver of a judicial forum is enforceable when the union controls access to and presentation of employees' claims in arbitration, which 'is usually the case.'") (internal citations omitted).

In the instant case, Pioneer contends that the language of the CBA is clear and unmistakable, and provides that once an employee elects to proceed by way of a grievance, the employee has waived his or her right to have a discrimination claim decided in the courts.[5]  See Pioneer Mem. in Supp. of Mot. to Dismiss (Docket No. 6) at 9 ("the 14 Penn Plaza Court held that a Union may waive an employee's rights to a judicial forum for discrimination claims, provided that the agreement is clear and unmistakable, as it is in this case").  Pioneer further contends that since the employee has

_____

[5]  In its "Reply in Support of Motion to Dismiss" (Docket No. 26) ("Pioneer's Reply"), Pioneer argues for the first time that the waiver does not need to be "clear and unmistakable." Id. at 6.  Rather, Pioneer contends that the instant case, like Gilmer, "'involve[s] an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees and hence the clear and unmistakable standard [is] not applicable.'" Id. (quoting Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 80-81, 119 S. Ct. 391, 397, 142 L. Ed. 2d 361 (1998); internal quotations omitted).  Even assuming that this dichotomy is still good law, this argument is without merit as this case involves a union-negotiated waiver provision which is binding on the employees.  Gilmer involved the terms governing an individual's employment as a securities representative, and differs significantly from the instant case.  Thus, the Gilmer Court found it very significant that Gilmer's case did not raise the "important concern" present in earlier cases which involved "the tension between collective representation and individual statutory rights[.]" Gilmer, 500 U.S. at 35, 111 S. Ct. 1657.  In the instant case, while Silva may have had a choice whether to file a grievance, the Union, not Silva, negotiated the waiver language of the CBA, and it did so on behalf of all of its employees.  Moreover, according to the CBA, the Union was to represent Silva in any grievance proceedings.  The instant case raises the precise " important concern" the Court avoided in Gilmer and falls squarely within the line of cases holding that "a union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination" must be "clear and unmistakable." Wright, 525 U.S. at 80, 119 S. Ct. at 396, and cases cited.

the choice of which option to take, the provision is not against public policy.  See id.

This court finds both of these arguments unpersuasive.  The CBA does not adequately explain that the mere filing of a grievance, without more, can result in the forfeiture of the employee's right to have a discrimination claim heard on the merits in any forum.  In addition, where, as here, the union is the sole entity with authority to proceed to arbitration and it elected not to do so, the CBA provision constitutes an impermissible waiver of the employee's statutory anti-discrimination rights.

**B.**     **The Language of the CBA**

As detailed above, in order for Silva's waiver of her right to have her discrimination claim resolved in a judicial forum to be enforceable, the waiver must be "clear and unmistakable."  See Lemieux v. City of Holyoke, No. 08-cv-30038-MAP, __ F. Supp.2d ___, 2010 WL 3766489, at *10 (D. Mass. Sep. 28, 2010), and cases cited.  See also Warfield v. Beth Israel Deaconess Med. Ctr., Inc., 454 Mass. 390, 398, 910 N.E.2d 317, 325 (2009) ("Consistent with the public policy against workplace discrimination reflected in G.L. c. 151B, we conclude that an employment contract containing an agreement by the employee to limit or waive any of the rights or remedies conferred by G.L. c. 151B is enforceable only if such an agreement is stated in clear and unmistakable terms.").  The parties all agree that this court has jurisdiction to determine whether the CBA at issue meets this standard.[6]  See Pioneer's Reply (Docket No. 26) at 2-3 (Court can construe

---

[6] Therefore, this court will not address the Union's argument that it is for the arbitrator, and not this court, to further interpret the CBA.

unambiguous language of the CBA); <u>Union's Opp. to Mot. to Dismiss</u> (Docket No. 18) at

2 (Court should find that the purported waiver is not clear and unmistakable and,

therefore, is unenforceable).  For the reasons detailed herein, this court finds that the

waiver does not meet this standard.

As an initial matter, this court must address Pioneer's argument that the CBA does

not, in fact, involve any waiver, since Silva has the clear option of litigating her discrimi-

nation claim instead of filing a grievance.  <u>See</u> <u>Pioneer's Reply</u> at 8 ("The election of

remedies provision explicitly preserved Plaintiff's right to pursue her discrimination

claims through . . . any state or federal court action" and, therefore, "does not waive any

of Plaintiff's rights – whether substantive or procedural.").  This argument begs the

question.  The issue is whether the CBA clearly and unmistakably explains the conse-

quences of adopting the grievance route.  It does not matter that the CBA provides that

Silva clearly has the option to pursue a discrimination claim in court.  Taken to its logical

conclusion, Pioneer's argument is that as long as an employee has the express right to sue

in court, the employee can be tricked into waiving his or her right to sue by being given

an unclear alternative.  Such an argument obviously makes a mockery of the <u>Penn Plaza</u>

requirement that the waiver must be clear and unmistakable.  The fact that Silva was

given an alternative to proceed with litigation does not eliminate the need for the waiver

of such right to be clear and unmistakable.

As quoted above, Article 21.3 of the CBA gives an employee the right to pursue

discrimination claims "either (1) through the grievance and arbitration procedure (Article

37), or (2) through any other forum available at law, including, but not limited to, any state or federal court action. . . ."[7]  It also provides that "[o]nce an employee has pursued in any forum a particular discrimination claim, or related claim, such forum shall be the sole and exclusive forum for such claim."  Id.  It is clearly stated that the purpose of this exclusivity provision is "to prevent . . . unnecessary litigation of disputes in multiple forums and to encourage the consolidation of proceedings into a single forum."  CBA Art. 21.4.  In this court's view, the CBA fails to clearly and unmistakably advise an employee that the mere filing of a grievance, which is never addressed on the merits, is sufficient to preclude the employee from pursuing a judicial remedy.

The CBA refers to the "grievance and arbitration procedure," (emphasis added), not just to the filing of a grievance.  This leaves the impression that the discrimination claim will be heard on the merits in at least an arbitration forum if that alternative is selected.  The inference is further supported by Article 21.4, which equates the arbitration and court proceedings and indicates that the employee is being given an option of proceeding in either an arbitration or judicial forum so that all issues are decided together and the parties' efforts are not duplicated, but rather resolved in "a single forum."

---

[7]  There is no dispute that this provision expressly governs claims alleging violations of Mass. Gen. Laws ch. 151B.  See Art. 21.2 reference to the Massachusetts Fair Employment Practices Act.  Therefore, this court will not address the line of cases which deal with whether a specific arbitration provision covers statutory anti-discrimination rights.  See, e.g., Blanchette v. Sch. Comm. of Westwood, 427 Mass. 176, 183, 692 N.E.2d 21, 26 (1998) ("Blanchette was a member of a union covered by a collective bargaining agreement and the agreement, both by statute and by its own terms, was limited to disputes concerning its own interpretation and application").

However, nothing in the CBA alerts the employee that only one of the two possible forums guarantees that the discrimination claim will be heard at all.

Moreover, the reference to "Article 37" as being the "grievance and arbitration procedure" buttresses the implication that an employee selecting that option would have his or her claim proceed through arbitration if necessary. In fact, Article 37 of the CBA is entitled simply "Grievance Procedure." The additional language in Article 21.3 specifying grievance <u>and</u> arbitration would easily lead an employee to understand that all four steps of the "grievance and arbitration procedure" would be available to resolve the dispute.[8]

If Pioneer had intended that the mere filing of a grievance would be sufficient to cut off an employee's right to litigate discrimination claims, it clearly could have done so. For example, in <u>Schram v. City of Minneapolis</u>, Civil No. 09-909 (JSM), 2010 WL 4193077 (D. Minn. Mar. 16, 2010) (slip op.), the court addressed a CBA which provided, in relevant part,

> once a written grievance or an appeal has been properly filed or
> submitted by the employee or the Federation on the employee's
> behalf through the grievance procedure of this Agreement or another

---

[8] This court also notes that Pioneer's sexual harassment policy provides that the filing of a complaint with the company does not preclude the employee from commencing suit. While there may be a technical, albeit real, difference between proceeding pursuant to the CBA and the company's sexual harassment policy, from an employee's point of view there is no reason why one approach would require the company to investigate the complaint and allow for the employee to insure compliance through litigation, while in the other approach under the CBA the employee cedes all rights to insure that a sexual harassment claim is addressed at all.

> available procedure, the Employee's right to pursue redress in an
> alternative forum or manner is terminated.

Id. at *3.  Since Pioneer failed to make it clear that the filing of a written grievance alone,

without the opportunity to proceed to arbitration, would terminate an employee's right to

seek a judicial resolution of his or her claim, Silva is not precluded from proceeding with

this litigation.

### C.    Any Waiver is Unenforceable as to Silva

Even assuming, arguendo, that the CBA's waiver provision is clear and unmis-

takable, it is unenforceable as it deprived Silva of a forum in which to have her dispute

resolved.  As detailed above, in the instant case the Union had the sole authority to

determine whether or not to pursue arbitration of an employee's claim, and it elected not

to do so.[9]  Unions may decline to pursue arbitration for legitimate reasons having nothing

to do with the merits of an employee's dispute.  See Ayala v. Union de Tronquistas de

P.R., Local, 901, 74 F.3d 344, 346 (1st Cir. 1996) ("A union is accorded considerable

discretion in dealing with grievance matters, and it may consider the interests of all its

members when deciding whether or not to press the claims of an individual employee."

(internal quotations and citation omitted)).  In light of the fact that Silva had absolutely no

control over whether her claim was ever addressed on the merits in the grievance and

arbitration procedure, she has been denied a forum to "effectively . . . vindicate [her]

---

[9] Since this case presents the situation where the union declined to proceed with the
discrimination claim, this court does not need to address the situation where the union is prepared
to arbitrate a matter, but the employee declines to proceed with arbitration after filing a grievance.

statutory cause of action" and the CBA waiver provision is unenforceable.  See Gilmer,

500 U.S. at 28, 111 S. Ct. at 1653 (quotations and citation omitted).  See also Rosenberg

v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 11 (1st Cir. 1999) (compul-

sory arbitration of Title VII claims enforceable provided that arbitral forum provides an

opportunity for litigant to vindicate his or her rights).  As the court explained in Shankle

v. B-G Maint. Mgmt. of Colorado, Inc., 163 F.3d 1230 (10th Cir. 1999):

> As *Gilmer* emphasized, arbitration of statutory claims works because
> potential litigants have an adequate forum in which to resolve their
> statutory claims and because the broader social purposes behind the
> statute are adhered to.  *Gilmer*, 500 U.S. at 28, 111 S. Ct. 1647.
> This supposition falls apart, however, if the terms of an arbitration
> agreement actually prevent an individual from effectively vindicating
> his or her statutory rights ....  Accordingly, an arbitration agreement
> that prohibits use of the judicial forum as a means of resolving
> statutory claims must also provide for an effective and accessible
> alternative forum.

Id. at 1234, and cases cited.

Courts addressing the issue post-Penn Plaza have reached the same result and have

held that where the submission of a statutory claim to arbitration is exclusively within the

province of the union and the union declines to pursue the matter, the waiver of an

employee's right to a judicial forum is unenforceable.  See, e.g., Morris v. Temco Serv.

Indus., Inc., No. 09 Civ. 6194(WHP), 2010 WL 3291810, at *5-6 (S.D.N.Y. Aug. 12,

2010) (slip op.) (where union elected to abandon discrimination claim, the CBA's

arbitration provision may not be enforced as it operates as a "substantive waiver" of

employee's statutorily created rights), and cases cited; Kravar v. Triangle Servs., Inc., No.

1:06-cv-07858-RJH, 2009 WL 1392595, at *3 (S.D.N.Y. May 19, 2009) ("In view of the

Supreme Court's analysis in *Pyett*, 129 S. Ct. at 1474, and *Gilmer*, 500 U.S. at 29, there

is little question that if Ms. Kravar's union prevented her from arbitrating her disability

discrimination claims, the CBA's arbitration provision may not be enforced as to her.

The Court finds that this in fact occurred."). See also Schram, 2010 WL 4193077 at *8-9

(finding that terminated employee who was denied a hearing on the merits pursuant to a

grievance procedure controlled by the union was denied his due process rights). Similar-

ly, in the instant case, the Union had exclusive control over whether to pursue Silva's

discrimination claim and the plaintiff, through no fault of her own, did not have the

opportunity for a hearing on the merits of that claim. "[A]n employee cannot be required

as a condition of employment to waive access to a neutral forum in which statutory

employment discrimination claims may be heard." Cole v. Burns Int'l Sec. Servs., 105

F.3d 1465, 1482 (D.C. Cir. 1997). That is precisely the situation here. Silva has been

denied an alternative forum in which to vindicate her rights. Consequently, the CBA's

arbitration option constitutes an impermissible waiver of Silva's rights. Pioneer's motion

to dismiss the instant litigation will be denied.[10]

---

[10] This court also has doubts that the CBA's limitations period, which requires that a grievance be filed within 14 days of the incident, is sufficient to serve the "remedial and deterrent function" of the discrimination laws. Gilmer, 500 U.S. at 28, 111 S. Ct. at 1653 (quotations and citation omitted); Krahel v. Owens-Brockway Glass Container, Inc., 971 F. Supp. 440, 453 (D. Or. 1997) (requirement that a grievance be filed within three days insufficient to protect Title VII rights). However, in light of this court's conclusion that the CBA arbitration option constitutes an impermissible waiver of Silva's rights, the timing issue does not need to be addressed further.

### D. **Federal Jurisdiction**

In her sur-reply brief filed after oral argument, Silva questions whether this case was properly removed on the grounds of federal question jurisdiction. This belated challenge to this court's jurisdiction is without merit for a number of reasons. For example, it is undisputed that this court has subject matter jurisdiction over the Union's complaint for declaratory judgment. Consequently, this court may exercise supplemental jurisdiction over the original complaint. 28 U.S.C. § 1367(a); Balog v. Jeff Bryan Transp. Ltd., No. CIV-10-505-D, 2010 WL 3075288, at *4 (W.D. Okla. Aug. 5, 2010) (exercising supplemental jurisdiction over original complaint on basis of original jurisdiction over intervenor's claim).

## IV. **CONCLUSION**

For all the reasons detailed herein, Pioneer's Motion to Dismiss (Docket No. 5) is DENIED.

  / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge
